# Holland & Knight

900 Third Avenue 20th Floor | New York, NY 10022 | T 212.751.3001 | F 212.751.3113
Holland & Knight LLP | www.hklaw.com

David V. Mignardi
212.751.3171
david.mignardi@hklaw.com

June 24, 2022

**VIA ECF:**
Honorable John Michael Vazquez, U.S.D.J.
Martin Luther King U.S. Court House Building
50 Walnut Street
Newark, New Jersey 07102

    Re:    *Wilmington Trust, N.A., as Trustee, etc. v. 24 Commerce Street LLC, et al*;
             Case No. 2:21-cv-05498

Dear Judge Vazquez:

      We are counsel to plaintiff Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2019-C50, Commercial Mortgage Pass-Through Certificates, Series 2019-C50 ("Plaintiff") in the above-referenced action. We write, in accordance with the Summary Judgment Practices portion of Your Honor's Judicial Preferences, seeking leave to file a motion for, inter alia, summary judgment as against defendants 24 Commerce Street LLC ("Borrower") and M.P. Management ("MP Management" and, together with Borrower, "Answering Defendants") on Counts I, III and IV[1] of the Amended Complaint, dated March 17, 2021 (see ECF No 3), that Plaintiff filed herein. Submitted herewith is the Rule 56.1 Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment and Other Relief (the "Rule 56.1 Statement").[2]

**Plaintiff's *Prima Facie* Entitlement to Judgment as a Matter of Law is Demonstrable**

> A mortgagee establishes a prima facie right to foreclosure when there is proof of execution, recording, and non-payment of the mortgage. The "essential elements" necessary for a foreclosure judgment to be granted in New Jersey are "the validity of the note and mortgage; the alleged default; and the Bank's right to foreclose." A bank's right to foreclose includes its standing by assignment. A mortgagor opposing summary judgment in a foreclosure proceeding "has a duty to present facts to controvert a mortgagee's prima facie case."

---

[1] In Count II of the Amended Complaint, Plaintiff sought the appointment of a receiver, which relief was partially granted in this Court's Order dated October 14, 2021. See ECF No. 48.

[2] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Rule 56.1 Statement

#175081480_v1 527548.00025

Honorable John Michael Vazquez, U.S.D.J.
June 24, 2022
Page 2

Bank of New York Mellon v. Wallach, Civil Action No. 15-724 (MLC), 2017 WL 1734031, at *3 (D.N.J. May 3, 2017) (citations omitted).  Here, Plaintiff possesses a prima facie entitlement to summary judgment in light of the following, incontrovertible evidence:

 (i) Borrower executed the Note in favor of Original Lender (see Rule 56.1 Statement ¶ 10);

 (ii) Original Lender advanced funds, in the form of the Loan, to Borrower pursuant to the terms of the Loan Agreement and the Note (id. ¶ 9);

 (iii) as collateral security for the payment of the Loan, Borrower executed, acknowledged and delivered to Original Lender, inter alia, the Mortgage which Original Lender recorded against the Property and in the Register's Office (id. ¶ 11);

 (iv) Plaintiff is the lawful holder and owner of the Note by virtue of the allonges affixed thereto, which Note was delivered to Plaintiff prior to commencement of this action (id. ¶¶ 16, 21, 26);

 (v) in addition, Plaintiff is the assignee of the Note and Mortgage by virtue of assignments of the Mortgage into Plaintiff (id. ¶¶ 17, 22, 27); and

 (vi) Borrower is in default of its obligations under the Loan Documents by virtue of, inter alia, the Payment Default, the Cash Management Default, the Financial Reporting Default, the Fraud Default and the Covenant Defaults (id. ¶¶ 32-55).

**Answering Defendants Cannot Carry their Shifted Burden by Establishing a Need for Trial**

> In mortgage foreclosure actions like the instant case, there are so few available defenses that New Jersey state courts have held that the spectrum of facts considered "material" is significantly limited for purposes of summary judgment. Courts have thus recognized that many contesting answers are, in fact, "legally insufficient" because they fail to "challenge the essential elements of the mortgagee's right to foreclose and fail to interpose a validly recognized defense."

Patch of Land Lending, LLC v. 181 Mapes Ave, LLC, Civil Action No. 16-9540, 2017 WL 6550483, at *2 (D.N.J. Dec. 21, 2017) (citations omitted).

 In its Answer to Complaint, dated June 1, 2021, M.P. Management asserted the following nineteen (19) affirmative defenses: (i) failure to state a cause of action; (ii) failure to serve predicate notice; (iii) failure to comply with notice requirements and applicable law; (iv) lack of standing; (v) the assignments of mortgage are facially defective; (vi) lack of capacity to sue; (vii) waiver, laches, and/or the applicable statute of limitations; (viii) failure to mitigate damages; (ix) failure to act in a commercially reasonable manner; (x) course of conduct; (xi) failure to act in a commercially reasonable manner in accordance with Article 9 of the UCC; (xii) M.P. Management

#175081480_v1 527548.00025

Honorable John Michael Vazquez, U.S.D.J.
June 24, 2022
Page 3

is entitled to a setoff on damages; (xiii) Plaintiff's damages caused by third parties; (xiv) Plaintiff's own negligence, willful misconduct, breach of contract or other intentional or reckless conduct caused its damages; (xv) waiver, laches, estoppel and ratification; (xvi) laches and/or avoidable consequences; (xvii) Plaintiff's own breach of the Loan Documents; (xviii) waiver and bad faith; and (xix) reservation of right to assert additional defenses. See ECF No. 21.

In its Answer with Affirmative Defenses, dated June 9, 2021, Borrower asserts fifteen (15) affirmative defenses: (i) failure to state a claim; (ii) unclean hands, waiver, estoppel and/or laches; (iii) statute of limitations; (iv) parole evidence rule; (v) statute of frauds; (vi) Plaintiff is estopped from recovery because of its own conduct; (vii) Plaintiff is estopped from recovery because of its perpetration of fraud; (viii) New Jersey law prohibits recovery of the default interest and charges that Plaintiff seeks to recover; (ix) lack of standing; (x) lack of subject matter jurisdiction; (xi) abstention; (xii) failure to mitigate damages; (xiii) Plaintiff's own conduct caused its damages; (xiv) Borrower is entitled to a set-off; and (xv) reservation of right to assert additional defenses. See ECF No. 25.

All of the foregoing defenses are boilerplate in nature and pose no obstacle to Plaintiff's pursuit of summary judgment as "they fail to 'challenge the essential elements of [Plaintiff]'s right to foreclose[.]" Patch of Land Lending, LLC, 2017 WL 6550483, at *2. Moreover, save for Answering Defendants' lack of standing affirmative defenses,[3] none of these defenses are "material" with respect to Plaintiff's mortgage foreclosure claim and, in turn, are "legally insufficient" to warrant denial of Plaintiff's contemplated motion for summary judgment. Id.

For the foregoing reasons, Plaintiff respectfully submits that this Court should grant Plaintiff leave to file its contemplated motion for, inter alia, summary judgment.

Respectfully Submitted,

**HOLLAND & KNIGHT LLP**

By: _/s/ David V. Mignardi_
David V. Mignardi, Esq.

cc: All counsel of record (via ECF)
Keith M. Brandofino, Esq. (via e-mail)

---

[3] While Answering Defendants' lack of standing defenses are material (see Wallach, at *3), the undisputed documentary and testimonial evidence demonstrates that Plaintiff has the right to foreclose as the holder, owner and assignee of both the Note and Mortgage at the time of commencement (see Rule 56.1 Statement ¶¶ 16-31).

#175081480_v1 527548.00025

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2019-C50, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-C50, acting by and through Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of May 1, 2019, <br><br>        Plaintiff, <br><br>   v. <br><br>24 COMMERCE STREET LLC; M.P. MANAGEMENT LLC; BBF PARTNERS LLC; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, <br><br>The names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Property Herein Described, <br><br>        Defendants. | Civil Action File No. 21-cv-05498-JMV-JBC |

**RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OTHER RELIEF**

   Plaintiff Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2019-C50, Commercial Mortgage Pass-Through Certificates, Series 2019-C50 ("Plaintiff"), acting by and through Rialto Capital Advisors, LLC ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of May 1, 2019, as for its Statement of Material Facts pursuant to Local Civil Rule 56.1, states as follows:

A. **The Parties**

1. Plaintiff is citizen of Delaware. Compl.[1] ¶¶ 1-3.

2. Since May 14, 2019, Plaintiff has been the holder of the security interest in certain real property and improvements located at the real property commonly known as 1442 Lexington Avenue, New York, New York 10128, Block: 1522, Lot: 158 (the "Property"). Id. ¶¶ 30-34.

3. Defendant 24 Commerce Street LLC ("Borrower") is a citizen of both New York and New Jersey. Id. ¶ 4.

4. Borrower is the owner of the Property, obligor of the note, and mortgagor of the mortgage that are the subject of this action. Id. ¶¶ 4, 10-12.

5. Defendant M.P. Management LLC ("M.P. Management") is a citizen of both New York and New Jersey. Id. ¶ 5.

6. M.P. is the mortgagee of a subordinate mortgage, in the amount of $2,000,000.00, dated March 7, 2019 and recorded against the Property on March 11, 2020 in the Essex County Register's Office (the "Register's Office") as Instrument No. 2020027751 (the "M.P. Mortgage"). Id. ¶ 5; see also Pastor Decl.,[2] Ex. 23.

7. Defendant BBF Partners LLC ("BBF Partners") is a citizen of both New York and New Jersey. Compl. ¶ 6.

8. BBF is the mortgagee of a subordinate mortgage, in the amount of $2,700,000.00, dated July 9, 2019 and recorded against the Property on December 20, 2019 in the

---

[1] The Amended Complaint, dated March 17, 2021 (see ECF No. 3), will be referred to herein as "Compl."

[2] The Declaration of Sandra Pastor in Support of Plaintiff's Application for the Appointment of a Receiver, sworn to on May 7, 2021 (see ECF No. 13-1), shall be referred to as "Pastor Decl."

2

Register's Office as Instrument No. 2019120443 (the "BBF Mortgage"). Id. ¶ 6 see also Pastor Decl., Ex. 24.

**B.      The Loan Documents**

9.      On April 4, 2019, Borrower obtained a loan in the original principal amount of $14,500,000.00 (the "Loan") from Argentic Real Estate Finance LLC ("Original Lender") pursuant to that certain Loan Agreement dated as of April 12, 2018 and executed by and between Original Lender and Borrower (the "Loan Agreement").  Compl. ¶ 10; see also Pastor Decl. ¶¶ 5-6, Ex. 1.

10.     In connection with and as evidence of the Loan, Borrower executed and delivered to Original Lender a Promissory Note dated April 4, 2019 and in the original principal amount of $14,500,000.00 (the "Note").  Compl. ¶ 11; see also Pastor Decl. ¶ 7, Ex. 2.

11.     In connection with and as collateral security for the payment of the Loan, Borrower executed, acknowledged and delivered to Original Lender a Mortgage, Assignment of Leases and Rents and Security Agreement dated as of April 4, 2019 (the "Mortgage"), pursuant to which Borrower, inter alia, granted Original Lender a security interest in the Property.  Compl. ¶ 12.  On April 14, 2019, Original Lender recorded the Mortgage against the Property with the Register's Office as Instrument No. 2019034219, and duly paid the mortgage recording taxes. Compl. ¶ 12; see also Pastor Decl. ¶ 8, Ex. 3.

12.     In connection with and as additional collateral security for the Loan, Borrower executed, acknowledged, and delivered to Original Lender an Assignment of Leases and Rents dated as of April 4, 2019 (the "ALR"), pursuant to which Borrower, inter alia, granted Original Lender a security interest in all Leases and Rents (as those terms are defined in the Loan Agreement) generated from the Property.  Compl. ¶ 14.  On May 9, 2019, Original Lender recorded

3

the ALR in the Register's Office as Instrument No. 2019043224. Compl. ¶ 14; see also Pastor Decl. ¶ 9, Ex. 4.

13. To perfect its interest in the Collateral, on May 9, 2019, Original Lender recorded a Uniform Commercial Code Financing Statement with the Register's Office as Instrument No. 2019043225 (the "County UCC-1"), which names Original Lender as the secured party and Borrower as the debtor. Compl. ¶ 17; see also Pastor Decl. ¶ 10, Ex. 5.

14. To further perfect its interest in the Collateral, on April 8, 2019, Original Lender filed a Uniform Commercial Code Financing Statement with the Delaware Department of State ("Dept. of State") as Initial Filing Number 20192421407 (the "State UCC-1") which names Original Lender as the secured party and Borrower as the debtor. Compl. ¶ 18; see also Pastor Decl. ¶ 11, Ex. 6.

15. In order to induce Original Lender to give the Loan and to further secure its repayment, non-party Jacob Tauber ("Guarantor") executed a Guaranty of Recourse Obligations dated April 4, 2019 (the "Guaranty"), wherein and whereby Guarantor irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined in the Guaranty). Compl. ¶ 19; see also Pastor Decl. ¶ 12, Ex. 7.

C. **Assignment of the Loan Documents**

16. Original Lender executed an allonge to the Note dated April 4, 2019 (the "First Interim Allonge") indorsed in favor of SPREF WH III LLC ("Interim Holder"), and delivered the Note, with the First Interim Allonge affixed thereto, to Interim Holder. By virtue of this delivery, Original Lender transferred to Interim Holder all of its rights, title and interest in and to the Note and Interim Holder became the holder of the Note. Compl. ¶ 20.

4

#175167011_v2 527548.00025

17. Original Lender also executed and delivered an Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement dated April 4, 2019 (the "First Interim Assignment of Mortgage") pursuant to which Original Lender transferred to Interim Holder all of its rights, title and interest in and to the Mortgage and Interim Holder became the holder of the Mortgage. On May 28, 2019, Interim Holder recorded the First Interim Assignment of Mortgage in the Register's Office as Instrument No. 2019048860. Id. ¶ 21.

18. Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents dated April 4, 2019 (the "First Interim Assignment of ALR") pursuant to which Original Lender transferred to Interim Holder all of its rights, title and interest in and to the ALR and Interim Holder became the holder of the ALR. On May 28, 2019, Interim Holder recorded the First Interim Assignment of ALR as Instrument No. 2019048861. Id. ¶ 22.

19. By Uniform Commercial Financing Statement Amendment, Original Lender assigned the County UCC-1 to Interim Holder (the "County UCC First Interim Assignment"). On May 28, 2019, Interim Holder recorded the County UCC First Interim Assignment in the Register's Office as Instrument No. 2019048862. Id. ¶ 23.

20. By Uniform Commercial Financing Statement Amendment, Original Lender assigned the State UCC-1 to Interim Holder (the "State UCC First Interim Assignment"). On May 21, 2019, Interim Holder filed the State UCC First Interim Assignment in the Dept. of State as File Number 20193502098. Id. ¶ 24.

21. Interim Holder executed an allonge to the Note effective May 14, 2019 (the "Second Interim Allonge") indorsed in favor of Original Lender, and delivered the Note, with the Second Interim Allonge affixed thereto, back to Original Lender. By virtue of this delivery,

#175167011_v2 527548.00025

Interim Holder transferred back to Original Lender all of its rights, title and interest in and to the Note and Original Lender became the holder of the Note once again. Id. ¶ 25.

22. Interim Holder also executed and delivered an Assignment of Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement dated May 14, 2019 (the "Second Interim Assignment of Mortgage") pursuant to which Interim Holder transferred back to Original Lender all of its rights, title and interest in and to the Mortgage and Original Lender became the holder of the Mortgage once again.  On July 26, 2019, Original Lender recorded the Second Interim Assignment of Mortgage in the Register's Office as Instrument No. 2019069335. Id. ¶ 26.

23. Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents dated May 14, 2019 (the "Second Interim Assignment of ALR") pursuant to which Interim Holder transferred back to Original Lender all of its rights, title and interest in and to the ALR and Original Lender became the holder of the ALR once again.  On July 26, 2019, Interim Holder recorded the First Interim Assignment of ALR as Instrument No. 2019069336. Id. ¶ 27.

24. By Uniform Commercial Financing Statement Amendment, Interim Holder assigned the County UCC-1 back to Original Lender (the "County UCC Second Interim Assignment").  On July 26, 2019, Original Lender recorded the County UCC First Interim Assignment in the Register's Office as Instrument No. 2019069337. Id. ¶ 28.

25. By Uniform Commercial Financing Statement Amendment, Interim Holder assigned the State UCC-1 back to Original Lender (the "State UCC Second Interim Assignment"). On September 13, 2019, Original Lender filed the State UCC Second Interim Assignment in the Dept. of State as File Number 20196376987. Id. ¶ 29.

26. Original Lender executed an allonge to the Note effective May 14, 2019 (the "Plaintiff Allonge") indorsed in favor of Plaintiff, and delivered the Note, with the Plaintiff Allonge affixed thereto, to Plaintiff. By virtue of this delivery, Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note. Id. ¶ 30.

27. Original Lender also executed and delivered an Assignment of Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement dated May 14, 2019 (the "Plaintiff Assignment of Mortgage") pursuant to which Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Mortgage and Plaintiff became the holder of the Mortgage. On July 26, 2019, Plaintiff recorded the Plaintiff Assignment of Mortgage in the Register's Office as Instrument No. 2019069338. Id. ¶ 31.

28. Original Lender also executed and delivered an Assignment of Assignment of Leases and Rents dated May 14, 2019 (the "Plaintiff Assignment of ALR") pursuant to which Original Lender transferred to Plaintiff all of its rights, title and interest in and to the ALR and Plaintiff became the holder of the ALR. On July 26, 2019, Interim Holder recorded the Plaintiff Assignment of ALR as Instrument No. 2019069339. Id. ¶ 32.

29. By Uniform Commercial Financing Statement Amendment, Original Lender assigned the County UCC-1 to Plaintiff (the "County UCC Plaintiff Assignment"). On July 26, 2019, Plaintiff recorded the County UCC Plaintiff Assignment in the Register's Office as Instrument No. 2019069340. Id. ¶ 33.

30. By Uniform Commercial Financing Statement Amendment, Original Lender assigned the State UCC-1 to Plaintiff (the "State UCC Plaintiff Assignment"). On

#175167011_v2 527548.00025

September 13, 2019, Plaintiff filed the State UCC Plaintiff Assignment in the Dept. of State as File Number 20196377167. Id. ¶ 34.

31. At time of the commencement of this action, Plaintiff was the owner and holder of the Note, the Mortgage and all other Loan Documents, and remains so to this day. Pastor Decl. ¶ 13, Ex. 2, 8-19.

**D.    Borrower's Defaults Under the Loan Documents**

    **i.    The Payment Default**

32. Pursuant to Section 2.2.1 of the Loan Agreement, Borrower is obliged to remit the Monthly Interest Payment Amount on each Payment Date. Compl. ¶ 35; see also Pastor Decl., Ex. 1.

33. Section 8.1(a) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "any portion of the Debt is not paid when due . . . ." Compl. ¶ 36; see also Pastor Decl., Ex. 1.

34. By notice dated March 18, 2020 (the "March Notice of Default"), Plaintiff, through counsel, notified Borrower of, inter alia, Borrower's failure to remit all sums payable on the, inter alia, March 6, 2020 Payment Date in accordance with Section 2.2.1 of the Loan Agreement. Compl. ¶ 37; see also Pastor Decl. ¶ 17, Ex. 20.

35. Accordingly, an Event of Default has occurred and is continuing under the Section 8.1(a) of the Loan Agreement since March 6, 2020 as a result of, inter alia, Borrower's continued failure to remit all sums payable on the March 6, 2020 Payment Date and each Payment Date monthly thereafter (the "Payment Default"). Compl. ¶ 38.

8

#175167011_v2 527548.00025

### ii. The Cash Management Default

36. Pursuant to, inter alia, Article 3 of the Loan Agreement, Borrower is obliged to, inter alia, (i) maintain the Clearing Account (as defined in the Loan Agreement) and cause all Rents to be directly deposited therein by non-residential tenants of the Property throughout the term of the Loan; (ii) deposit (or cause to be deposited) into the Clearing Account all Rents otherwise received by Borrower, or Manager (as defined in the Loan Agreement), within one (1) business day of receipt; (iii) not commingle any Rents with any other funds or property of Borrower or Manager; and (iv) upon occurrence of a Cash Management Period (as defined in the Loan Agreement), establish a Cash Management Account (as defined in the Loan Agreement) (collectively, the "Cash Management Obligations"). Compl. ¶ 39; see also Pastor Decl., Ex. 1.

37. Section 8.1(m) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "a default shall be continuing under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not otherwise specified in this Section 8.1 . . . for thirty (30) days after notice from Lender in the case of any [default other than one which can be cured by the payment of a sum of money.]" Compl. ¶ 40; see also Pastor Decl., Ex. 1.

38. By the March Notice of Default, Plaintiff, through counsel, notified Borrower of, inter alia, Borrower's failure to uphold its Cash Management Obligations. Compl. ¶ 41; see also Pastor Decl. ¶ 17, Ex. 20.

39. Plaintiff, through counsel, reminded Borrower of its failure to cure the Cash Management Default (defined below) in a notice dated August 21, 2020 (the "August Notice of Default"), and therein demanded to cure said default, but Borrower has failed to do so. Compl. ¶ 42; see also Pastor Decl. ¶ 17, Ex. 21.

40. Accordingly, an Event of Default has occurred and is continuing under Section 8.1(m) of the Loan Agreement since April 18, 2020 as a result of, <u>inter alia</u>, Borrower's continued failure to uphold its Cash Management Obligations for thirty (30) days after the March Notice of Default (the "Cash Management Default").  Compl. ¶ 43.

### iii.   The Financial Reporting Default

41. Pursuant to, <u>inter alia</u>, Section 6.3 of the Loan Agreement, Borrower is obliged to provide, <u>inter alia</u>, (i) a proposed 2020 Annual Budget; and (ii) the quarterly and year-to-date records, reports and rent rolls for the fourth quarter of 2019 pursuant (collectively, the "Delinquent Required Records").  <u>Id.</u> ¶ 44; <u>see also</u> Pastor Decl., Ex. 1.

42. By the March Notice of Default, Plaintiff, through counsel, notified Borrower of, <u>inter alia</u>, Borrower's failure to provide the Delinquent Required Records.  Compl. ¶ 45; <u>see also</u> Pastor Decl. ¶ 17, Ex. 20.

43. Plaintiff, through counsel, reminded Borrower of its failure to cure the Financial Reporting Default (defined below) in the August Notice of Default, and therein demanded to cure said default, but Borrower has failed to do so. Compl. ¶ 46; <u>see also</u> Pastor Decl. ¶ 17, Ex. 21.

44. Accordingly, an Event of Default has occurred and is continuing under Section 8.1(m) of the Loan Agreement since April 18, 2020 as a result of, <u>inter alia</u>, Borrower's continued failure to provide the Delinquent Required Records for thirty (30) days after the March Notice of Default (the "Financial Reporting Default"). Compl. ¶ 47.

### iv.   The Fraud Default

45. In Section 4.6 of the Loan Agreement, Borrower represented and warranted that, as of April 4, 2019, "Borrower has good, marketable and indefeasible title in fee to the real

property and good title to the balance of the Property, free and clear of all Liens except the Permitted Encumbrances." Id. ¶ 48; see also Pastor Decl., Ex. 1.

46. Further, in Section 4.23 of the Loan Agreement, Borrower represented and warranted that, as of April 4, 2019, "[t]here is no indebtedness with respect to the Property or any excess cash flow or any residual interest therein, whether secured or unsecured, other than Permitted Encumbrances and Permitted Indebtedness." Compl. ¶ 49; see also Pastor Decl., Ex. 1.

47. Section 8.1(e) of the Loan Agreement provides that an Event of Default shall occur if "any . . . representation or warranty made by Borrower . . . herein . . . shall be false or misleading in any material respect as of the date the representation or warranty was made[.]" Compl. ¶ 50; see also Pastor Decl., Ex. 1.

48. Borrower made the representations and warranties within Sections 4.6 and 4.23 of the Loan Agreement despite having incurred the M.P. Mortgage as an unpermitted debt and encumbrance against the Property. Compl. ¶ 51; see also Pastor Decl., Ex. 1, 23.

49. Accordingly, an Event of Default has occurred and is continuing under Section 8.1(e) of the Loan Agreement since April 4, 2019 because Borrower's representations and warranties in Sections 4.6 and 4.23 of the Loan Agreement were false or materially misleading as of April 4, 2019, the date they were made (the "Fraud Default"). Compl. ¶ 52.

    v.    **The Covenant Defaults**

50. In Section 5.13 of the Loan Agreement, Borrower covenanted and agreed until the end of the term thereof that, inter alia, "Borrower shall at all times be a Special Purpose Bankruptcy Remote Entity." Id. ¶ 53; see also Pastor Decl., Ex. 1.

51.     Pursuant to Schedule 5(I)(xxi) of the Loan Agreement, a "Special Purpose Bankruptcy Remote Entity", inter alia, "has not and will not have any indebtedness other than Permitted Indebtedness[.]" Compl. ¶ 54; see also Pastor Decl., Ex. 1.

52.     Further, in Section 5.22(i) of the Loan Agreement, Borrower covenanted and agreed until the end of the term thereof that, inter alia, "Borrower shall not directly or indirectly create, incur or assume any indebtedness other than . . . the Debt." Compl. ¶ 55; see also Pastor Decl., Ex. 1.

53.     Section 8.1(h) of the Loan Agreement provides that an Event of Default shall occur if "Borrower breaches any covenant contained in", inter alia, Sections 5.14 and 5.22 of the Loan Agreement. Compl. ¶ 56; see also Pastor Decl., Ex. 1.

54.     On July 9, 2019, and during the term of the Loan Agreement, Borrower obtained the BBF Mortgage despite covenanting not to do so in Section 5.22 of the Loan Agreement. On that same date, Borrower ceased being a Special Purpose Bankruptcy Remote Entity despite Borrower covenanting not to do so in Section 5.13 of the Loan Agreement. Compl. ¶ 57; see also Pastor Decl., Ex. 24.

55.     Accordingly, Events of Default have occurred and are continuing under Section 8.1(h) of the Loan Agreement since July 9, 2019 as a result of Borrower's breaches of the covenants contained in Sections 5.13 and 22 of the Loan Agreement (the "Covenant Defaults"). Compl. ¶ 58.

56.     By letter dated December 22, 2020 (the "Notice of Acceleration"), Plaintiff, through its counsel, inter alia, notified Borrower and Guarantor of, inter alia, the occurrence and continuance of Events of Default based upon, inter alia, the Payment Default, the Cash

#175167011_v2 527548.00025

Management Default and the Financial Reporting Default, and accelerated and declared the entire Debt due and payable.  Id. ¶ 62; see also Pastor Decl. ¶ 18, Ex. 22.

E.   **Plaintiff's Rights and Borrower's Obligations Upon Borrower's Default**

57.   Section 8.2.1 of the Loan Agreement provides that, upon the occurrence of an Event of Default, Plaintiff may take any such at law or in equity that Plaintiff deems advisable to protect and enforce its rights against Borrower and in and to the Property.  Compl. ¶ 61; see also Pastor Decl., Ex. 1.

58.   Despite receipt of the March Notice of Default, August Notice of Default and the Notice of Acceleration, Borrower and Guarantor have failed to cure the existing Events of Default or satisfy their obligations under the Loan Documents.  Compl. ¶ 63.

59.   As a result of the foregoing, there is now due and owing by Borrower to Plaintiff, pursuant to the Loan Documents: (i) approximately $14,500,000.00 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses; (v) the Yield Maintenance Premium; and (vi) all other sums provided for under the Loan Documents in an amount to be determined.  Id. ¶ 64.

Dated: New York, New York
      June 24, 2022

**HOLLAND & KNIGHT LLP**

By: _/s/ David V. Mignardi_
    David V. Mignardi, Esq.
    Attorneys for Plaintiff
      *Wilmington Trust, National Association,*
      *as Trustee for the Benefit of the Registered*
      *Holders of Wells Fargo Commercial Mortgage*
      *Trust 2019-C50, Commercial Mortgage Pass-*
      *Through Certificates, Series 2019-C50, acting*
      *by and through Rialto Capital Advisors, LLC,*
      *as Special Servicer under the Pooling and*
      *Servicing Agreement dated as of May 1, 2019*
    900 Third Avenue, 20th Floor
    New York, New York 10022

#175167011_v2 527548.00025