<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2019-C50, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-C50, acting by and through Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of May 1, 2019,

> *Plaintiff,*

v.

24 COMMERCE STREET LLC; M.P. MANAGEMENT LLC; BBF PARTNERS LLC; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100

> *Defendants.*

Civil Action No. 2:21-cv-05498

<u>OPINION</u>

<u>**John Michael Vazquez, U.S.D.J.**</u>

This matter concerns Defendant 24 Commerce Street LLC's ("Borrower") alleged defaults under certain loan documents. Before the Court is Plaintiff's motion for summary judgment and other relief[1] against Borrower, M.P. Management LLC ("M.P. Management"), and BBF Partners LLC ("BBF"). D.E. 127. The Court reviewed the submissions in support and in opposition,[2] and

---

[1] Plaintiff requests that the Court: grant summary judgment as to Counts I, III, and IV; strike the affirmative defenses set forth by Borrower and Defendant M.P. Management; and enter default judgment against Defendant BBF. D.E. 130 at 1.

[2] Plaintiff's brief in support of its motion will be referred to as "Plf. Br." (D.E. 130); Borrower's opposition will be referred to as "Def. Opp." (D.E. 144); and Plaintiff's reply brief will be referred

considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R.

78.1(b).  For the reasons stated below, Plaintiff's motion is **GRANTED in part and DENIED in**

**part.**

## I.      FACTUAL BACKGROUND[3]

This case concerns a mortgage on real property in Newark, New Jersey (the "Property").[4]

D.E. 129 ("Gauer Decl.") ¶ 8.   The Property is owned by Defendant 24 Commerce Street LLC

---

to as "Plf. Reply" (D.E. 148).  Defendant M.P. Management LLC and Defendant BBF Partners LLC did not oppose the motion.

[3] The facts are drawn from Plaintiff's Statement of Undisputed Material Facts ("SUMF"), D.E. 109, and related documents and exhibits, D.E. 129.  Initially, Borrower failed to respond to the SUMF or provide a supplemental statement of material facts.  D.E. 111.  The Court provided an additional opportunity to do so and advised that failure to comply would result in Plaintiff's SUMF being deemed unopposed for purposes of the motion.  D.E. 112.  Borrower then responded, admitting certain facts in full or in part, and denying other facts.  D.E. 114.  Borrower did not support any of its responses with citations to the record.  Rule 56 requires that a party who asserts that a fact "is genuinely disputed must support the assertion by [] citing to particular parts or materials in the record," . . . or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)(B).  If the non-movant fails to "properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).  Local Civil Rule 56.1 also requires an opponent who denies any paragraphs in its responsive statement of material facts to "cit[e] to the affidavits and other documents submitted in connection with the motion."  L. Civ. R. 56.1(a).  Where paragraphs fail to comply with these requirements, a court may deem such paragraphs admitted. *See, e.g.*, *Nike, Inc. v. E. Ports Custom Brokers, Inc.*, No. 11-4390, 2018 WL 3472628, at *1 n.1 (D.N.J. July 19, 2018) (deeming as admitted responses that certain facts were "neither admitted nor denied," and that certain evidence "'speaks for itself' without designating a citation or specific fact contained therein.'"); *see also Friedman v. Bank of Am., N.A.,* No. 9-2214, 2012 WL 1019220, at *6 n.2 (D.N.J. Mar. 26, 2012); *Carpenters Combined Funds ex rel. Klein v. Klingman*, No. 10-63, 2011 WL 92083, at *3 (W.D. Pa. Jan. 11, 2011.  Thus, the facts set forth in Plaintiff's SUMF are deemed admitted for purposes of the current motion.

[4] The Property includes "certain real property and improvements located at the real property commonly known as 24-30 Commerce Street, Newark, New Jersey 07102, identifiable as Block 145, Lots 19 and 19-B01 on the tax map [] in the City of Newark, County of Essex, State of New Jersey[.]" Gauer Decl. ¶ 8.

("Borrower").   SUMF ¶ 4.   On April 4, 2019, Borrower obtained a loan in the amount of $14,500,000 (the "Loan") from Argentic Real Estate Finance LLC ("Original Lender") pursuant to a loan agreement (the "Loan Agreement").  *Id.* ¶ 9; Ex. 1.[5]  Borrower also executed a Promissory Note (the "Note"), SUMF ¶ 10; Ex. 2, and a mortgage pursuant to which "Borrower[] … granted Original Lender a security interest in" the Property.   SUMF ¶ 11; Ex. 3.   The mortgage was properly recorded on April 14, 2019.  *Id.*  Borrower further executed "an Assignment of Leases and Rents" ("ALR"), pursuant to which Borrower granted Original Lender a security interest in all Leases and Rents generated from the Property.[6]  SUMF ¶ 12; Ex. 4.  The ALR was properly recorded on May 9, 2019.  *Id.*  The Original Lender also filed UCC-1 forms in Essex County, New Jersey, and the Delaware Department of State.  SUMF ¶¶ 13-14; Exs. 5, 6.

On April 4, 2019, the same day that the Loan Agreement was executed between Borrower and Original Lender, Original Lender transferred to SPREF WH III LLC (the "Interim Holder") "all of its rights, title and interest in" the Property.  SUMF ¶¶ 16-18; Exs. 2, 8, 9.  The Interim Holder transferred the same back to Original Lender on May 14, 2019.  SUMF ¶¶ 21-23; Ex. 2, 12, 13.  That same day, Original Lender transferred its rights, title, and interest in the Property to Plaintiff.  SUMF ¶¶ 26-28; Exs. 2, 16, 17.[7]

---

[5] The Court's citations to "Ex. __" correspond to the exhibits to the Gauer Declaration submitted in support of Plaintiff's motion.  *See* Exs. 1–25 (D.E. 129-1–129-25).  The Court's citations to "Def. Ex. __" correspond to the exhibits to the McCarthy Declaration in opposition to Plaintiff's motion.  *See* Def. Exs. A–Z (D.E. 145-1–145-26).  All page numbers cited in exhibits correspond with those in the ECF header.

[6] An additional guaranty was executed between the parties.  *See* SUMF ¶ 15; Ex. 7.

[7] The assignments from Original Lender to the Interim Holder, from the Interim Holder back to Original Lender, and from Original Lender to Plaintiff were all recorded.  SUMF ¶¶ 17-20, 22-25, 27-30; Exs. 8–19.

3

Unbeknownst to Plaintiff, Borrower also granted two other mortgages on the Property. SUMF ¶¶ 6, 8; Exs. 22, 23.  One of the mortgages was granted to Defendant M.P. Management on March 7, 2019, for a loan of $2,000,000, and was recorded on March 11, 2020, *see* Ex. 22, despite Borrower's assurances that it had "marketable and indefeasible title in fee to the real property and good title to the balance of the Property," and that "[t]here is no indebtedness with respect to the Property . . . whether secured or unsecured."  SUMF ¶¶ 6, 45, 48; Ex. 1 at 41, 48 (Sections 4.6 and 4.23 of the Loan Agreement).  Under Section 8.1(e) of the Loan Agreement, an "Event of Default" occurred if

> any certification, representation or warranty made by Borrower … herein or in any other Loan Document, or in any report, certificate, financial statement or other instrument, agreement or document furnished by Borrower … in connection with any Loan Document, shall be false or misleading in any material respect as of the date the representation or warranty was made[.]

*Id.* at 78 (Section 8.1(e) of the Loan Agreement).

The other mortgage was granted to Defendant BBF on July 9, 2019, for a loan of $2,700,000, and was recorded on December 20, 2019.  Ex. 23.  This mortgage was granted notwithstanding Borrower's promise that it would "at all times be a Special Purpose Bankruptcy Remote Entity."  *Id.* at ¶¶ 8, 51, 54; Ex. 1 at 56 (Section 5.13 of the Loan Agreement).  Pursuant to Schedule 5 of the Loan Agreement, a Special Purpose Bankruptcy Remote Entity must "not have any indebtedness other than Permitted Indebtedness, Ex. 1 at 111, meaning that Borrower "shall not directly or indirectly create, incur or assume any indebtedness other than . . . the Debt."[8] *Id.* at 57 (Section 5.22 of the Loan Agreement).  And Section 8.1(h) provides that an Event of

---

[8] "The Debt" is defined by the Loan Agreement to "mean the unpaid Principal, all interest accrued and unpaid thereon, any Yield Maintenance Premium and all other sums due to Lender in respect of the Loan or under any Loan Document."  Ex. 1 at 4 (Section 1.1 of the Loan Agreement).

Default shall occur if "Borrower breaches any covenant contained in Sections … 5.13[ or] 5.22[.]" *Id.* at 78 (Section 8.1(h) of the Loan Agreement) (emphases removed).

Several additional sections of the Loan Agreement are relevant.  Section 2.2.1 of the Loan Agreement requires Borrower to make monthly payments on the interest accrued on the principal of the Loan, and Section 8.1(a) deems a missed payment an Event of Default.  *Id.* at 28, 78 (Sections 2.2.1 and 8.1(a) of the Loan Agreement).  Section 3.1 of the Loan Agreement addresses "Cash Management Arrangements" and requires Borrower to direct "non-residential tenants of the Property" to pay their rents into a "Clearing Account." [9]  *Id.* at 33 (Section 3.1 of the Loan Agreement).  For residential tenants, Borrower is to collect rents and deposit the funds into the Clearing Account within one day of receipt.  *Id.*  All rents are "deemed to be collateral for the Loan and shall be held in trust for the benefit, and as the property, of Lender [,]" and are "not [to] be commingled with any other funds or property of Borrower[.]"  *Id.*  In the event of a "Cash Management Period," which commences "upon a Lender giving notice to the Clearing Bank" of a designated event, including a default as defined in the Loan Agreement, the funds are to be deposited into a "Cash Management Account" controlled by Lender.  *Id.* at 9-10, 33. Section 8.1(m) of the Loan Agreement provides as follows:

> A default shall be continuing under any of the other terms, covenants or conditions of this Agreement or any other Loan Document not otherwise specified in this Section 8.1 for ten (10) days after notice to Borrower … from Lender, in the case of any default which can be cured by the payment of a sum of money, or for thirty (30) days after notice from Lender in the case of any other default[.]

*Id.* at 79 (Section 8.1(m) of the Loan Agreement).

---

[9] Borrower retains "a revocable license … to collect the Rents subject to the requirements of the Loan Agreement (including the deposit of Rents into the Clearing Account)."  Ex. 3 at 8 (Section 2(a) of Mortgage).

Section 6.3 of the Loan Agreement imposes certain reporting and bookkeeping obligations on Borrower. *Id.* at 68-71 (Section 6.3 of the Loan Agreement).  In relevant part, Section 6.3.3 requires Borrower to "furnish" monthly or quarterly reports apprising Lender of the Property's expenses and income, receivables, and "rent rolls[.]"  *Id.* at 69-70 (Section 6.3.3 of the Loan Agreement).  Section 6.3.5 requires Borrower to submit for Lender's approval, on or before November 30, "a budget for the Property for the succeeding calendar year[.]".  *Id.* at 70 (Section 6.3.5 of the Loan Agreement).  Section 6.3.7 empowers Lender to fine Borrower for failing to provide any of the relevant records.  *Id.* at 71 (Section 6.3.7 of the Loan Agreement).

In addition, Section 8.2.1 of the Loan Agreement contains an acceleration clause, which provides as follows:

> Upon the occurrence of an Event of Default . . . and at any time and from time to time thereafter, in addition to any other rights or remedies available to it pursuant to the Loan Documents or at law or in equity, Lender may take such action, without notice or demand (and Borrower hereby expressly waives any such notice or demand), that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Property, including declaring the Debt to be immediately due and payable (including unpaid interest, Default Rate interest, Late Payment charges, Yield Maintenance Premium and any other amounts owing by Borrower), without notice or demand[.]

*Id.* at 79 (Section 8.2.1. of the Loan Agreement).

In a March 18, 2020 letter, Ex. 20 ("First Demand"), Plaintiff sent Borrower a notice of default, indicating that Borrower had failed to make payments in February and March 2020 and demanding that Borrower pay the amount due along with late fees. *Id.* at 2-3; SUMF ¶ 34.  Plaintiff continued that Borrower was not living up to its "[c]ash [o]bligations[,]" "by failing to cause all Rents to be directly deposited, and otherwise failing to deposit or cause to be deposited all Rents, in the Clearing Account[.]"  Ex. 20 at 3; SUMF ¶ 38.  Because events of default had occurred,

Plaintiff indicated that a Cash Management Period had been instituted and demanded that Borrower "establish a Cash Management Account." Ex. 20 at 3.   Finally, Plaintiff notified Borrower that it had failed to furnish Plaintiff with "(i) a proposed 2020 Annual Budget, [and] (ii) the quarterly and year-to-date records, reports and rent rolls for the fourth quarter of 2019 required under Section 6.3.3 of the Loan Agreement." *Id.* at 4; SUMF ¶ 42.

On August 21, 2020, Plaintiff sent a second demand letter.   Ex. 21 ("Second Demand"). That letter referred to the First Demand, informing Borrower that "the Events of Default identified in the September 2019 Letter and March 20[20] Letter remain outstanding[,]" including the failure to "remit the necessary amounts due," "comply with Borrower's Cash Obligations[,]" and provide "Delinquent Records." *Id.* at 2; SUMF ¶¶ 39, 43.   The Second Demand also stated that Borrower had failed to make payments for April, May, June, July, and August of 2020. *Id.* at 3.   Plaintiff revoked "Borrower's license to collect, use, and enjoy the rents[] … payable under . . . any Lease[.]" *Id.*   Plaintiff further informed Borrower of its intention to "strictly enforce the Loan Documents in accordance with their respective terms, including[] … acceleration of the Debt, appointment of a receiver, and commencement of proceedings to foreclose the Security Instruments." *Id.*

Plaintiff followed with a notice of acceleration on December 22, 2020, indicating that Borrower had failed to remit all payments between March 2020 and the date of the letter, which represented a further default.   Ex. 24 at 2-4 (the "Acceleration Notice").   At some point between the sending of the notice of acceleration and the filing of the Complaint on March 17, 2021, Plaintiff conducted a title search and discovered the two other liens discussed above. *See* SUMF ¶¶ 6, 8, 48, 5; Exs. 22, 23.

## II.    PROCEDURAL HISTORY

Plaintiff filed a Complaint on March 17, 2021, D.E. 1, and an Amended Complaint that same day, D.E. 3 ("Am. Compl."). The Amended Complaint seeks mortgage foreclosure, *id.* ¶¶ 10-66; appointment of a receiver, *id.* ¶¶ 67-73; security interest foreclosure, *id.* ¶¶ 74-78, and possession of the Property and the "Collateral,"[10] *id.* ¶ 79. On May 18, 2021, Plaintiff moved to appoint a receiver, D.E. 13, and on October 14, 2021, the Court granted Plaintiff's motion "to the extent that it seeks the appointment of a receiver of rents." D.E. 47, 48. The Court directed the Receiver to, among other things, collect rents from tenants to the Property and pay expenses for the Property. *Id.* On June 1, 2021, Defendant M.P. Management answered, D.E. 21, and on June 9, 2021, Borrower answered. D.E. 25. Defendant BBF has not appeared. On May 20, 2021, Plaintiff effected service of process upon Defendant BBF, D.E. 19, and on May 2, 2022, the Clerk of the Court issued an entry of default as to Defendant BBF. D.E. 103.

## III.    LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make

---

[10] The "Collateral" is defined as the "security interest in favor of the holder of the Mortgage in, *inter alia*, the buildings, structures, fixtures, and other improvements now or hereafter located on the property as well as the Premises (as defined in the Mortgage), including, but not limited to, the Improvements (as defined in the Mortgage), the Equipment (as defined in the Mortgage), the Leases (as defined in the Mortgage) and the Rents (as defined in the Mortgage)." Am. Compl. ¶ 3 (citing Ex. 2 (D.E. 3-2)).

credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The non-moving party cannot rest on mere pleadings or allegations; rather it must point to the actual evidence in the record on which a jury could decide an issue of fact its way." *El v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007) (citation omitted). "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51. As such, a failure to respond to the motion altogether, or a failure to adequately deny the moving party's

statement of undisputed material facts, does not automatically mean that summary judgment is granted. *Hutchinson v. Skradzinski*, No. 07-5968, 2010 WL 2326175, at *2 (D.N.J. June 3, 2010) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)). The Court must still determine "whether the motion sets out facts such that granting it is 'appropriate,' as required by Rule 56(e)." *Hutchinson*, 2010 WL 2326175, at *2 (citing *Anchorage Assocs.*, 922 F.2d at 176).

## IV.    ANALYSIS

### A. Borrower's Liability

Under New Jersey law,[11] a mortgagee establishes a *prima facie* right to foreclosure when there is proof of execution, recordation, and non-payment of the mortgage. *Wells Fargo Bank, N.A. v. Bertea*, No. 13-7232, 2016 WL 1182707, at *3 (D.N.J. Mar. 28, 2016) (citing *Thorpe v. Floremoore Corp.*, 89 A.2d 275, 276 (N.J. Super. Ct. App. Div. 1952)). "The 'essential elements' necessary for a foreclosure judgment to be granted in New Jersey are 'the validity of the note and mortgage; the alleged default; and the Bank's right to foreclose." *Bank of New York Mellon v. Walch*, No. 15-724, 2017 WL 1734031, at *3 (D.N.J. May 3, 2017) (citations omitted).  A mortgagor who opposes summary judgment in a foreclosure proceeding "has a duty to present facts to controvert a mortgagee's *prima facie* case.'" *Bertea*, 2016 WL 1182707, at *3 (citation omitted).

---

[11] In determining motions for summary judgment for foreclosure, courts in this district "generally apply the laws of the state where the property is located." *Bank of New York Mellon v. Walch*, No. 15-724, 2017 WL 1734031, at *3 (D.N.J. May 3, 2017) (citations omitted).  Here, the property is located in New Jersey but the Loan Agreement provides that New York law governs all disputes arising under the Agreement.  Ex. 1 at 92-93.  However, because both parties present their foreclosure arguments under New Jersey law, the Court applies New Jersey law. *See* Plf. Br. at 3-6; Def. Opp. at 11-14; *cf. Williams v. BASF Catalysts LLC*, 765 F.3d 30, 317 (3d Cir. 2014) (finding waiver of choice of law clause where the parties agreed that New Jersey law applied).

Here, there is no factual dispute that the "essential elements" are met. The parties do not dispute that the Note and Mortgage were duly executed and properly recorded, SUMF ¶¶ 9-14, or that Borrower has been in default of its obligations for several years, D.E. 111 (Borrower acknowledging that "[t]hroughout this litigation, Borrower has not disputed execution of the loan documents, or its default thereon."). Borrower has been in default since it failed to disclose the preexisting M.P. Management lien[12] and when it obtained the subsequent BBF Partners lien.[13] Borrower is also in default of other obligations. Borrower has not made any mortgage payments since early 2020. SUMF ¶¶ 32-35; *see also* Ex. 1 at 28, 78 (Sections 2.2.1, 8.1(a) of the Loan Agreement) (requiring Borrower to remit the Monthly Interest Payment Amount on each Payment Date and deeming a missed payment an Event of Default); Exs. 20, 21, 24 (notifying Borrower of

---

[12] SUMF ¶¶ 6, 45, 48; *see also* Ex. 22 (granting mortgage to M.P. Management on March 7, 2019); Ex. 1 at 41, 48 (Sections 4.23, 4.6) (representing that as of April 4, 2019, Borrower had "marketable and indefeasible title in fee to the real property and good title to the balance of the Property," and that "[t]here is no indebtedness with respect to the Property . . . whether secured or unsecured."); *id.* at 78 (Section 8.1(e)) (providing that an "Event of Default" exists with respect to the Loan if any "certification, representation, or warranty made by the Borrower," is "false or misleading in any material respect" as of the date that it was made).

[13] SUMF ¶¶ 8, 51-54; Ex. 23 (granting mortgage to BBF on July 9, 2019); *see also* Ex. 1 at 4, 49-50, 111 (Sections 1.1, 5.13, 5.22, Schedule 5) (representing that Borrower "will not have any indebtedness other than Permitted Indebtedness," meaning the only debt borrower will incur is the "unpaid Principal, all interest accrued and unpaid thereon, any Yield Maintenance Premium and all other sums due to Lender in respect of the Loan or under any Loan Document."); *id.* at 71 (Section 8.1(h)) (providing that an "Event of Default" occurs if "Borrower breaches any covenant contained in Sections . . . 5.13 [or] 5.22[.]").

its failure to make payments and acceleration). And Borrower is in default as to its cash management[14] and financial disclosure obligations.[15]

Thus, the Court turns to whether Plaintiff has a right to foreclose on the Property. "As a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt." *Bank of New York Mellon v. Walch*, No. 15-724, 2017 WL 1734031, at *4 (D.N.J. May 3, 2017) (quoting *Deutsche Bank Nat'l Trust Co. v. Mitchell*, 27 A.3d 1229, 1234–35 (N.J. Super. Ct. App. Div. 2011)) (internal quotations omitted). And "[i]t is well established in New Jersey that either possession of the note or an assignment of the mortgage that predated the original complaint confers standing on a party." *Id.* (quoting *Grant-Covert v. Wells Fargo Bank, N.A.*, No. 15-6018, 2016 WL 90108, at *3 (D.N.J. Mar. 9, 2016)).

Borrower argues, for the first time in this multi-year litigation, that Plaintiff should be prevented from foreclosing altogether based on a technicality with respect to the recording documents. *See* Def. Opp. at 8-14. Borrower essentially contends that the Mortgage and ALR

---

[14] SUMF ¶¶ 36-39; *see also* Ex. 1 at 9-10, 33 (Sections 1.1, 3.1) (requiring Borrower to deposit the funds received from residential tenants into the "Clearing Account" within one day of receipt; direct non-residential tenants to pay their rents into the "Clearing Account;" not commingle the funds with any other funds or property of Borrower;" and in the event of a "Cash Management Period," which commences upon a default (among other events), deposit funds into a "Cash Management Account" controlled by Lender); *id.* at 79 (Section 8.1(m)) (providing that an "Event of Default" under any of the terms, covenants or conditions of this Agreement, other than one that can be cured by the payment of money, shall be continuing for 30 days after notice from Lender); Exs. 20, 21, 24 (notifying Borrower of failure to fulfill cash obligations and acceleration).

[15] SUMF ¶¶ 41-43; *see also* Ex. 1 at 68-71 (Section 6.3) (requiring Borrower to provide monthly and quarterly reports apprising Lender of the Property's expenses and income, receivables, and rent rolls, and to submit a budget for the Property for the succeeding calendar year); *id.* at 79 (Section 8.1(m)) (providing that an "Event of Default" under any of the terms, covenants or conditions of this Agreement, other than one that can be cured by the payment of money, shall be continuing for 30 days after notice from Lender); Exs. 20, 21, 24 (notifying Borrower of failure to fulfill records requirements and acceleration).

were recorded twice in the Register's Office, and that Plaintiff only references the first recording in the pleading, while Plaintiff's assignment documents reference (and in turn, apply to) only the second recording. *Id.* As such, Borrower concludes that the Court cannot grant summary judgment because there is a dispute as to whether Plaintiff is the assignee of the mortgage that it seeks to foreclose. *Id.* Borrower adds that even if Plaintiff had listed the second recording numbers in the pleadings, the motion cannot be granted because there is a dispute as to whether the Original Lender retains a priority interest over the mortgage. *Id.* at 13-14.

Plaintiff counters that the mere fact that identical instruments were recorded twice, and that Plaintiff only referenced the first recording numbers (and not also the second) in its pleadings, have no bearing on whether Plaintiff is foreclosing on the correct mortgage because there is only one mortgage at issue—not two purported mortgages. Plf. Reply at 6-7.[16] The Court agrees— there is no dispute that there is only one mortgage at issue and that Plaintiff is the proper assignee. And Borrower's priority argument fails because any purported priority issues are not relevant to Borrower's obligations under the loan. *See CC Bus. Sols. v. HealthCare Res. Network, LLC*, No. 18-14461, 2019 WL 6799612, at *3 (D.N.J. Dec. 12, 2019) ("Issues of perfection and priority, however, are irrelevant to [the] [defendant's] obligations under the loans and guarantees, and therefore, do not create a genuine issue of material fact as to [the] [defendant's] obligations."). Furthermore, Borrower's arguments contradict its prior representations to the Court, which conceded both liability and Plaintiff's priority interest, while indicating that the only contested issue is damages. *See, e.g.*, D.E. 41 at 7 ("Plaintiff possesses a first mortgage on the Property, and

---

[16] *See also id.* at 7 (citing Def. Ex. B (D.E. 145-2), Def. Ex. D (D.E. 145-4) (identical mortgage instruments, differing only in recording date and transaction identification number); *see also* Def. Ex. C (D.E. 145-3), Def. Ex. H (D.E. 145-8) (identical ALR instruments, differing only in recording date and transaction identification number).

13

thus is fully secured as to the total amount alleged due and owing."); *id.* at 8 ("[I]t is undisputed that [the other] mortgages are subordinate to Plaintiff's lien, and that Plaintiff has a first priority security interest in the Property."); D.E. 53 (representing that Borrower will need to obtain financing "to pay off the lawful amounts due to Plaintiff," while contesting the amount due); D.E. 111 ("Borrower has not disputed execution of the loan documents, or its default thereon. However, Plaintiff has . . . intentionally inflat[ed] its payoff figures so as to prevent Borrower from refinancing the subject loan."). Borrower also fails to properly assert the relevant facts through either its responsive statement of material facts or in a supplemental statement of disputed material facts. *See supra* n. 3; SUMF ¶¶ 16-31 (deemed admitted for purposes of this motion). As such, the Court finds that there is no genuine dispute that Plaintiff was assigned the Note and Mortgage prior to the commencement of this action, and thus has a right to foreclose as the owner of the underlying debt.

**B. Borrower's Additional Arguments**

Borrower also argues that the Court should deny summary judgment because there are genuine issues of material fact as to Borrower's affirmative defenses and the amount of damages owed to Plaintiff under the Loan Documents. *See* Def. Opp. at 16-28.[17] Borrower's remaining affirmative defenses fall into two categories: those that are premised on theories of unclean hands

---

[17] Borrower adds that the Gauer Declaration ("Gauer Decl."), D.E. 129, should be "rejected" by the Court, and that in turn, the Court should deny Plaintiff's motion altogether because "without the submission of an affidavit or declaration by an affiant with personal knowledge, Plaintiff has failed to meet its burden of proof." *See* Def. Opp. at 14-16. The basis for this argument appears to be a challenge to Mr. Gauer's personal knowledge of the sworn statements made within the declaration and a typographical error as to Plaintiff's name. *Id.* In reply, Plaintiff directs the Court to the paragraphs that demonstrate the basis of Mr. Gauer's personal knowledge and submits an updated declaration which correctly references Plaintiff's name. *See* Plf. Reply at 3-5; D.E. 147 ("Reply Gauer Decl."). The Court accepts the Gauer Declarations in support of Plaintiff's motion.

and estoppel, and thus seek a setoff or credit for any intentional delays (Aff. Defs. No. 2, 6, 14); and those that are premised on a theory of fraud by omission and thus seek a bar from recovery (Aff. Defs. No. 7 and 13).[18]   D.E. 25 at 11-12; *see also* Def. Opp. at 28-32.   In a mortgage foreclosure action, defenses that fail to "challenge the essential elements of the mortgagee's right to foreclose"—*i.e.*, the validity of the note and mortgage, the alleged default, and the right to foreclose—are not "material" for purposes of liability.   *Patch of Land Lending, LLC v. 181 Mapes Ave., LLC*, No. 16-9540, 2017 WL 6550483, at *2-3 (D.N.J. Dec. 21, 2017) (citations omitted). As such, Borrower's defenses do not raise a genuine dispute of material fact as to Borrower's liability.[19]   Nevertheless, upon review of the parties' arguments as to the damages amount, the Court finds that summary judgment on the current record is not appropriate.   It appears that the amount of damages will need to be resolved by way of an evidentiary hearing rather than a jury trial.   *See* Def. Opp. at 16-28; Plf. Reply at 12-22; *see also* Ex. 1 at 94 (Section 10.8 of the Loan Agreement) (expressly waiving "any right to trial by jury fully to the extent that any such right shall now or hereafter exist with regard to the loan documents, or any claim, counterclaim, or other action arising in connection therewith." (emphases removed)).

---

[18] While Borrower asserts fifteen affirmative defenses in its Answer, *see* D.E. 25, Borrower's opposition only argues that five of the defenses—Nos. 2, 6, 7, 13, and 14—preclude the Court from granting summary judgment, thereby waiving its other defenses as to this motion.   *See Starland v. Fusari*, No. 10-4930, 2013 WL 12149123, at *10 (D.N.J. Nov. 15, 2013) (finding that the defendants' opposition only opposed summary judgment as to two of their affirmative defenses, and in turn, appeared to concede that summary judgment should be granted as to the remaining affirmative defenses).

[19] Under the Loan Agreement, it appears that Borrower expressly waived its right to assert defenses against Plaintiff.   *See* Ex. 1 at 86 (Section 10.15 of the Loan Agreement) (expressly waiving its "right to interpose or assert any [] offset, counterclaim, or defense" in any action or proceeding brought by Lender or an assignee of Lender).   However, the parties do not raise this argument and the Court does not consider it *sua sponte*.

Accordingly, Plaintiff's motion for summary judgment is granted as it pertains to Borrower's liability[20] and denied as it pertains to damages owed to Plaintiff.

## C. Plaintiff's Motion to Strike

Plaintiff also moves to strike Borrower's and M.P. Management's affirmative defenses "pursuant to Fed. R. Civ. P. 56." Plf. Br. at 1. Because the Court's summary judgment ruling is confined to liability and Borrower's remaining affirmative defenses only contest the amount that Plaintiff may recover, the Court declines to consider Plaintiff's motion to strike Borrower's affirmative defenses. Plf. Br. at 8-9. As to Plaintiff's motion to strike M.P. Management's affirmative defenses, the Court also declines to consider the motion because it was brought "pursuant to Fed. R. Civ. P. 56." Plf. Br. at 1; *see Colony Ins. Co. v. Troensa Constr., Inc.*, No. 17-03577, 2018 WL 4676038, at *9 n. 7 (D.N.J. Sept. 28, 2018) (citations omitted) (noting the court's "concern that [the] summary judgment motion included a request to dismiss affirmative defenses" because while "some courts have applied a summary judgment standard to affirmative defenses, it is by no means controlling."); *Malibu Media, LLC v. Lee*, No. 12-03900, 2013 WL 2252650, at *7 (D.N.J. May 22, 2013) (citations omitted) ("As an initial matter, the [c]ourt will decline to entertain dismissal of [the] [d]efendant's affirmative defenses under a summary judgment standard[.]"); *Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615, 616 (D. Del. 1976) ("The weight of authority and a close textual examination of the Rules convinces this [c]ourt that

---

[20] As such, the Court grants Plaintiff's request to foreclose on the mortgage (Count I) and security interest (Count III) and to possess (or have "its assignee or the purchaser of the Property at the foreclosure sale" possess) the Property and Collateral (Count IV); however, such relief is stayed pending the evidentiary hearing on damages. In the Court's view, after damages are decided, this matter should be subject to a final judgment. However, if Plaintiff objects to the stay, it may submit a motion seeking a lift of the stay.

a motion to strike an affirmative defense can be considered only as a Rule 12(f) motion and is not a proper motion under Rule 56(d)").

### D. Default Judgment as to Defendant BBF

Plaintiff also moves for a default judgment against Defendant BBF.  Plf. Br. at 9-10. Pursuant to Fed. R. Civ. P. 55, a court may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action.  Fed. R. Civ. P. 55; *see Anchorage Assocs. v. Virgin Is. Bd. of Tax Review,* 922 F.2d 168, 177 n. 9 (3d Cir.1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). While the "entry of a default judgment is left primarily to the discretion of the district court," the Third Circuit Court of Appeals has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180–81 (3d Cir. 1984) (citations omitted).  Before entering default judgment due to a defendant's failure to answer, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages.  *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015) (citations omitted).  Additionally, a court must determine the appropriateness of default judgment by weighing three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted).

### 1. Jurisdiction and Proper Service

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'"  *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2

(D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).   The Court has subject matter jurisdiction over this matter.  Diversity jurisdiction exists when "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states."  28 U.S.C. 1332(a). Here, Plaintiff is a citizen of Delaware,[21] and Defendants are citizens of New York,[22] and the amount in controversy exceeds $75,000.  Am. Compl. ¶ 8.  Therefore, the parties are diverse and the amount in controversy is satisfied.

The Court also has personal jurisdiction over Defendant BBF through specific personal jurisdiction.  Specific jurisdiction exists where the litigation arises out of or relates to the defendant's contacts with the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985). The Third Circuit provides a three-part test to determine whether specific jurisdiction exists. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citation omitted).  First, whether the defendant purposefully directed its activities at the forum; second, whether the litigation arises out of or relates to at least one of those activities; and third, if the prior two

---

[21] Plaintiff is a "national banking association with its designated main office located in Wilmington, Delaware."  Am. Compl. ¶ 1.  Thus, Plaintiff is a citizen of Delaware.  *See Bizzaro v. First Nat'l Bank*, 804 F. App'x 190, 191 (3d Cir. 2020) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located.").

[22] While Plaintiff pleads that each Defendant is a citizen of both New York and New Jersey, Am. Compl. ¶¶ 4-6, "the citizenship of an LLC is determined by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).  As such, Borrower is a citizen of New York because its sole member is 24 Commerce Holdings LLC, and the sole member of 24 Commerce Holdings LLC is Jacob Tauber, a citizen of New York.  Am. Compl. ¶ 4.; *see Zambelli*, 592 F.3d at 420 ("[W]here an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC.") (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)).  Likewise, Defendant M.P. Management and Defendant BBF are citizens of New York because "all of [their] members are resident[s] of New York."  Am. Compl. ¶¶ 5-6; *Zambelli*, 592. F.3d at 418.

18

requirements are met, whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *Id.* (internal quotations and citations omitted).

Here, the Court finds that Defendant BBF purposefully directed its activities at the forum by obtaining a mortgage interest in the Property because the Property is located in the State of New Jersey. In addition, Defendant BBF recorded the mortgage interest in the State of New Jersey with the Essex County Register of Deeds and Mortgages. Ex. 23. Next, the litigation seeks to foreclose on the mortgage and security interest in the Property on which BBF holds a mortgage. Finally, the Court finds that exercising jurisdiction comports with notions of "fair play and substantial justice." *Cf. Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (acknowledging that only in "rare cases" does fairness defeat otherwise valid personal jurisdiction).

The Court must also find that Defendant BBF was properly served with process. Here, Plaintiff served Defendant BBF by mailing a copy of the summons and amended complaint by certified mail, return receipt requested, to the principal place of business of Defendant BBF. D.E. 19. Rule 4(h)(1) provides that service upon a corporation may be made "in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1)." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) states that service may be made "following state law for serving a summons . . . in the state where the district court is located, or where service is made." Fed. R. Civ. P. 4(e)(1). In other words, service upon a corporation may be made in accordance with the New Jersey Rules of Court relating to service of process. Under New Jersey Court Rule 4:4-4(b), "[i]f it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule," then personal jurisdiction may be obtained over a corporation by "mailing a copy of the summons and

complaint by registered or certified mail, return receipt requested, and simultaneously by ordinary mail to . . . a registered agent for service, or to its principal place of business, or to its registered office." N.J. Ct. R. 4:4-4(b)(1)-(b)(1)(C).[23]   As such, process was properly served on May 20, 2021, D.E. 19, and the Clerk of the Court entered a default against Defendant BBF on May 2, 2022. D.E. 103.

### 2. Sufficiency of Plaintiff's Cause of Action and Proof of Damages

Next, the Court must determine whether the Complaint states a proper cause of action.  As determined above, there is no dispute that Borrower is in default of its obligations and that Plaintiff has a right to foreclose.  There is also no dispute that Defendant BBF is the holder of a subordinate mortgage recorded against the Property.  SUMF ¶ 8; Ex. 23.   As such, Plaintiff's cause of action is sufficient.  Nevertheless, Plaintiff must also prove damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).  Accordingly, the Court denies the motion for default judgment without prejudice subject to Plaintiff proving damages at the upcoming evidentiary hearing.[24]

---

[23] *See* Declaration of Inquiry (D.E. 103-3) ("Pursuant to N.J. Ct. R. 4:4-5(b), I have made a diligent inquiry to effectuate service of process upon [Defendant] BBF in the State of New Jersey and, having determined that such service cannot be effectuated, Plaintiff has resorted to serving process upon [Defendant] BBF in the State of New York pursuant to Fed. R. Civ. P. 4(e)(1) and N.J. Ct. R. 4:4-4(b)(1)(c)").

[24] The Court otherwise finds that default judgment is appropriate based on its weighing of the *Chamberlain* factors.  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).   First, Plaintiff is likely to be prejudiced if its motion for default judgment is denied.  *See Strike 3 Holdings, LLC v. Doe*, No. 21-1568, 2022 WL 16744122, at *3 (D.N.J. Nov. 7, 2022) (citation omitted) (finding that denial of a motion for default judgment would prejudice plaintiff by leaving plaintiff without recourse).  Next, the Court cannot consider Defendant BBF's defenses, if any exist, because Defendant BBF has failed to respond to this action.  *Id.*; *see also United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (finding that because the defendant failed to respond, "no meritorious defense presently exists with respect to deciding this motion for default judgment.").   Finally, the Court presumes that Defendant BBF is culpable due to its failure to respond to this action.  *See Strike 3*, 2022 WL 16744122, at *3 (citation omitted) (presuming culpability based on failure to respond).

**V.     CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment and other relief, D.E. 130, is **GRANTED in part and DENIED in part**.  An appropriate Order accompanies this Opinion.

Date: March 15, 2023

_____
John Michael Vazquez, U.S.D.J.